# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-21-39-G-1 |
| ) | |
| TRACI M. ASHFORD, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is a Motion to Suppress (Doc. No. 64), filed through counsel by Defendant Traci M. Ashford. The Government has responded in opposition (Doc. No. 67). On August 9, 2021, the Court conducted an evidentiary hearing on the Motion. Defendant appeared personally and through counsel, Kyle Wackenheim and J.P. Hill. The Government appeared through Assistant U.S. Attorneys Jacquelyn Hutzell and Travis Leverett. The Court heard the testimony of Oklahoma City Police Department ("OCPD") officers Colton Case and Matt Woodworth.[1] As announced at the evidentiary hearing, upon consideration of the evidence and the parties' arguments, the Motion is DENIED.

I.   Standard

"The purpose of a suppression hearing is 'to determine preliminarily the admissibility of certain evidence allegedly obtained in violation of defendant's rights under the Fourth and Fifth Amendments.'" *United States v. Maurek*, 131 F. Supp. 3d 1258, 1261-62 (W.D. Okla. 2015) (quoting *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir.

---

[1] The Court finds these witnesses' testimony credible as to any portions relied upon herein.

1982)). "'The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search.'" *Id.* at 1262 (quoting *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009)). The government must then prove by a preponderance of the evidence that the search or seizure that occurred was lawful—e.g., that exigent circumstances or another exception to the warrant requirement existed or that the evidence sought to be suppressed was not the fruit of the poisonous tree. *See id.*; *United States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *see also United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021) ("Though the defendant bears the burden of proving whether and when the Fourth Amendment was implicated, the government then bears the burden of proving that its warrantless actions were justified by an exception." (alterations and internal quotation marks omitted)).

II.  Background

Defendant has been charged in a one-count Indictment with possession of a firearm despite previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), on or about October 6, 2020. *See* Indictment (Doc. No. 17).

On October 6, 2020, an individual called 911 to report a domestic incident near a residence in Oklahoma City, Oklahoma. *See* Doc. No. 38-1 (audio recording). The caller stated a black man in a Thunder basketball jersey with the number zero was outside and pulled a gun out of a silver or "goldish" Chrysler 300. The caller described the gun as a black "long" gun and said after the man pulled it out, he pointed it at a woman as she tried to run down the street. While on the phone, the caller described the man putting the gun

back in the Chrysler 300, getting into the car with others, and driving away. The caller said the man who pointed the gun was driving the Chrysler 300.

When OCPD Officer Case responded to the call in his patrol car, he observed a silver Chrysler 300 traveling away from the address provided by the caller. Upon stopping the vehicle, the OCPD officer found the driver to be a black male wearing a Thunder basketball jersey with the number zero on it. A male passenger and a female passenger (S.E.) were in the back seat. The OCPD officer asked if there were any firearms in the vehicle and Defendant, who was driving, stated, "Yeah, they got weapons back there." The male passenger put his hands up and looked towards the floorboard.

OCPD Officer Woodworth also reported to the location of the stopped vehicle. When the second officer approached the stopped vehicle from the passenger side, he saw a rifle on the rear floorboard through the vehicle's open window. A loaded black AK-47 rifle was found in the rear passenger side floorboard during the course of the traffic stop.

Officer Woodworth interviewed S.E., who was later identified as the victim of the reported domestic incident. S.E. spoke about the domestic assault, telling the officer that Defendant had struck her on the mouth and pulled her hair so hard that he ripped a ponytail weave from her head. The officer could see through the open window a small cut on S.E.'s mouth and that her lip appeared swollen.

## III.  Discussion

Defendant challenges the "search and seizure of his person and property," arguing that "[t]here was no warrant for his arrest and there were no established or well-delineated exceptions justifying the search and seizure of his person and the car." Def.'s Mot. at 3.

3

The Government responds that the traffic stop was supported by reasonable suspicion of criminal activity. In "asking whether the stop is supported by a reasonable suspicion of criminal activity," the Court "examine[s] the events that occurred leading up to the stop to determine whether the historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *United States v. Moran*, 503 F.3d 1135, 1140 (10th Cir. 2007) (internal quotation marks omitted).

The Court finds that looking to the "totality of the circumstances," including the precise match of the Chrysler 300 with the car described by the 911 caller, the car's proximity to the reported address of the incident and orientation driving away from that address, and the short lapse in time between the incident and the officer's observation of the car, the officer "ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). The traffic stop was supported by Officer Case's reasonable suspicion of criminal activity and therefore comports with the Fourth Amendment.

With respect to the seizure of the rifle from the interior of the vehicle, the Court agrees with the Government that this seizure was permissible under the plain view doctrine. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). "The plain view doctrine allows a law enforcement officer to seize evidence of a crime, without violating the Fourth Amendment, if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or

evidence of a crime), and (3) the officer had a lawful right of access to the object." *United States v. Khan*, 989 F.3d 806, 818 (10th Cir. 2021) (internal quotation marks omitted).

Thus, "an officer may, if on the premises . . . under an exception of the warrant requirement, seize items which immediately appear to be evidence or contraband of a crime." *Id.*  Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

Here, the OCPD officers had lawfully stopped the car as outlined above, and the rifle was plainly visible through the open window as the second officer approached the car and questioned its occupants.  Further, the rifle's incriminating character was immediately apparent due to the officers having been informed of the 911 call, in which the caller reported a domestic dispute wherein a man matching Defendant's description pointed a rifle matching the one found in the car at a woman on the street.  Probable cause thus existed to find the firearm was sufficiently "tied to a crime" or had an "incriminating nature" that "was 'immediately apparent.'"  *Chavez*, 985 F.3d at 1247; *see* Gov't's Ex. 2, at 1 (Officer Case's report stating that he was "advise[d]" that the call reported "a black male wearing a basketball jersey" "pointed a gun at a female" before leaving in "a silver Chrys[]ler 300"); *see also* OCPD Record (Doc. No. 67-2) at 2 (reflecting that Defendant was booked in state-court charges that included domestic assault and battery after a felony conviction).

## CONCLUSION

For all of these reasons, Defendant's Motion to Suppress (Doc. No. 64) is DENIED.

IT IS SO ORDERED this 9th day of August, 2021.

*Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge